**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 23-4527**

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DAVID MILAM,

Defendant - Appellant.

———————

**No. 23-4528**

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DAVID CRAIG MILAM,

Defendant - Appellant.

———————

**No. 23-4529**

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DAVID MILAM,

　　　　　Defendant - Appellant.

_____

Appeals from the United States District Court for the Eastern District of North Carolina, at Wilmington and Greenville.  Louise W. Flanagan, District Judge.  (7:19-cr-00176-FL-1; 7:19-cr-00102-FL-1; 4:22-cr-00025-FL-1)

_____

Argued:  March 18, 2025　　　　　　　　　　　　Decided:  August 13, 2025

_____

Before NIEMEYER and RICHARDSON, Circuit Judges, and FLOYD, Senior Circuit Judge.

_____

Affirmed by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Richardson and Judge Floyd joined.

_____

**ARGUED:**  Kelly Margolis Dagger, ELLIS & WINTERS LLP, Raleigh, North Carolina, for Appellant.  Lucy Partain Brown, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  Paul K. Sun, Jr., ELLIS & WINTERS LLP, Raleigh, North Carolina, for Appellant.  Michael F. Easley, Jr., United States Attorney, David A. Bragdon, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

2

NIEMEYER, Circuit Judge:

David Milam, the leader of the Aryan Kings, a White supremacist group, pleaded guilty on August 13, 2019, to possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). Then, on January 15, 2020, he pleaded guilty to conspiracy to distribute methamphetamine and heroin and to possession with intent to distribute methamphetamine and heroin, in violation of 21 U.S.C. §§ 846 and 841(a)(1). And finally, on June 7, 2023, he pleaded guilty to assaulting persons assisting federal officers in performance of their official duties, in violation of 18 U.S.C. § 111(b). In a single sentencing hearing, the district court imposed a downward variant sentence of 300 months' imprisonment for all three convictions.

Milam sought authorization to withdraw his first two guilty pleas because, as he discovered after pleading guilty, the government's production of discovery included a copy of the search warrant and supporting affidavit that inadvertently omitted every other page. The district court denied his motion, and he now appeals that ruling. He also contends that, during sentencing, the district court erroneously denied him credit for acceptance of responsibility when the government had agreed to it and had not objected to the recommendation in the presentence report that he receive it. Finally, he argues that his 300-month sentence was substantively unreasonable.

For the reasons that follow, we affirm.

3

I

Officers with the Sheriff's Office in Onslow County, North Carolina, received information that Milam was the leader of the Aryan Kings, a White supremacist street gang, and that the gang met at Milam's residence. Accordingly, they conducted surveillance of his residence. When they observed Milam leaving his residence in an uninsured vehicle, they stopped him and recovered a spoon and a syringe loaded with heroin from a passenger and, from the vehicle, $14,612 in cash, two grams of marijuana, and packaging materials associated with drug trafficking. Milam acknowledged that the cash and the marijuana belonged to him.

That same day, the officers observed another vehicle leaving Milam's residence with an expired license plate, and they also stopped it, recovering crystal methamphetamine.

Based on these stops, the officers obtained a search warrant for Milam's residence and executed it, all again on the same day, May 22, 2019. The officers recovered two 9mm pistols, a .22 caliber handgun, two assault rifles, ammunition, high-capacity magazines, 31.9 grams of crystal methamphetamine, 27.5 grams of heroin, digital scales, and a marijuana pipe. The guns were found in an area of the residence that the Aryan Kings used as a "clubhouse" or meeting place, while the drugs were found in the master bedroom. As no one was at home during the execution of the warrant, the officers left a copy of the inventory of seized items in the house, which indicated that the items had been seized pursuant to a search warrant.

4

A few weeks later, on June 12, 2019, a federal grand jury returned an indictment charging Milam with the possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  Two months later, Milam pleaded guilty to that charge without a plea agreement, having rejected the plea agreement that the government had offered.

On November 18, 2019, the government filed additional charges against Milam for conspiracy to distribute 500 grams or more of a substance containing methamphetamine and 100 grams or more of heroin, in violation of 21 U.S.C. § 846, and possession with intent to distribute quantities of methamphetamine and heroin, in violation of 21 U.S.C. § 841(a)(1).  Again, Milam pleaded guilty to these charges, but this time he did so pursuant to a plea agreement negotiated by his counsel, Assistant Federal Public Defender Rosemary Godwin.

During both guilty plea hearings, the district court conducted thorough guilty plea colloquies under Federal Rule of Criminal Procedure 11 during which Milam agreed to the facts underlying the charges against him and stated, of his free will, that he was guilty.  And in both cases, the district court accepted his plea as knowing and voluntary.

While detained at the Pamlico County Jail awaiting sentencing, Milam began to receive drugs and other contraband mailed to him by a fellow member of the Aryan Kings.  At Milam's direction, his associate labeled the packages "legal mail" and affixed a return address with the name and address of Milam's attorney.  Milam then sold the drugs to other inmates, collecting payment through a mobile payment app.  Eventually, a letter that Milam's associate had sent containing illegal drugs was returned to the Federal Public Defender's Office for insufficient postage, and Milam's attorney, Rosemary Godwin,

5

opened the envelope to discover the illegal substances. At that point, she filed a motion to withdraw as Milam's attorney, which the court granted, and Milam was thereafter provided with a new attorney.

Also while detained in jail, Milam assaulted multiple sheriff's deputies after one ordered him to move to another cell. Milam refused to move, stating, "[I]f you try and move me, I'm going to fuck you up." When another officer arrived to help, Milam punched one of them in the jaw, and he continued to fight until he was eventually restrained. As a result of these assaults, two officers were injured. A federal grand jury thereafter returned an indictment on April 26, 2022, charging Milam with forcibly assaulting and inflicting bodily injury upon persons assisting federal law enforcement officers in the performance of their official duties, in violation of 18 U.S.C. § 111(b).

During this same period, Milam's new attorney began reviewing discovery that the government had provided several years earlier — *i.e.*, shortly after Milam had been indicted in the firearms case — and noticed that the copy of the May 22, 2019 search warrant and supporting affidavit was incomplete, missing every other page. When the new attorney pointed this out to the government's attorney, the government's attorney promptly provided a full copy to Milam's attorney and noted that the government had made an inadvertent scanning error when originally producing the copy.

Milam nonetheless filed a motion in October 2022 to withdraw his guilty pleas in both the firearms case and the drug-distribution case, arguing that because he had pleaded guilty without the benefit of a complete and accurate copy of the search warrant and supporting affidavit, his guilty pleas had not been knowing and voluntary. He also argued

6

that his first attorney's apparent failure to notice the error showed that he lacked the close assistance of competent counsel when he pleaded guilty. These circumstances, he maintained, amounted to "a fair and just reason for requesting the withdrawal" of his guilty pleas, as authorized by Federal Rule of Criminal Procedure 11(d)(2)(B).

In response to the motion, the government argued that its mistake in producing a deficient copy of the search warrant and affidavit was not material in that there was no evidence from which to conclude that Milam would have filed a motion to suppress or gone to trial had it produced a complete copy of the search warrant and affidavit. The government also disputed Milam's claim that his attorney's apparent failure to notice the error indicated that Milam had lacked the close assistance of competent counsel when he pleaded guilty. To the contrary, it noted, Milam's former attorney had been able to negotiate a favorable plea agreement for Milam that was likely to result in a lower sentence.

The district court conducted an evidentiary hearing on Milam's motion, during which it received testimony from Rosemary Godwin, Milam's former attorney. Godwin testified that she had met with Milam at least five times before his first guilty plea and that they had discussed several strategic options, including the possibility "of contesting the search warrant." She testified that Milam, however, was not interested in those options and that he wanted to plead guilty as quickly as possible. Even though she admonished him to "slow it down," telling him that he "may have defenses" and that because there was a search warrant, he "may have a search warrant issue," Milam still insisted on pleading guilty with the hope of avoiding a term of life imprisonment.

7

After the hearing, the district court denied Milam's motion to withdraw his guilty pleas. The court concluded that "the undisclosed pages of the search warrant were not material" to Milam's decision to plead guilty and that he had accordingly failed to establish a reasonable probability that he would not have pleaded guilty had his counsel noticed the omission. The court also pointed out that any motion to suppress evidence recovered pursuant to the search warrant would have lacked merit.

After the court denied his motion to withdraw, Milam pleaded guilty without a plea agreement to the assault charge.

The court scheduled sentencing for Milam's three convictions to take place at a single sentencing hearing. In advance of sentencing, the probation officer prepared a presentence report in which he concluded that Milam's total offense level was 39, which included a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, as agreed to in Milam's plea agreement. With an offense level of 39 and a Criminal History Category VI, the recommended sentencing range was 360 months' imprisonment to life.

At the sentencing hearing on July 11, 2023, the district court addressed all of Milam's arguments and requests. After the government argued that Milam should not be entitled to credit for acceptance of responsibility in light of his subsequent conduct while detained, the court declined to apply the three-level reduction. Then, after a lengthy exchange, the court ultimately accepted the recommendation of the parties that the proper offense level should be 38. That level, combined with a Criminal History Category VI, resulted in a recommended sentencing range of 360 months' imprisonment to life. Following an extended discussion of Milam's circumstances and conditions, as well as the

8

18 U.S.C. § 3553(a) sentencing factors, the court imposed a downward variant sentence of 300 months' imprisonment.  It characterized that sentence as "a generous sentence" that "reflect[ed] the good and the bad" and took "into consideration the need to discourage this type of behavior, to promote respect for the law, to protect the people of the Eastern District of North Carolina and elsewhere," as well as Milam's "background and . . . history, and the exceedingly dangerous criminal conduct" that had brought him before the court.

From the district court's judgment dated July 26, 2023, Milam filed this appeal, challenging both the district court's denial of his motion to withdraw his guilty pleas and his sentence.

II

Milam contends first that the district court erred in denying his motion to withdraw his first two guilty pleas — a motion based on the government's production of an incomplete copy of the search warrant and affidavit, which included only every other page. The district court ruled that the incomplete copy was not material to whether Milam pleaded guilty.  Milam argues nonetheless that the incomplete copy was indeed material and that if he had known the contents of the complete affidavit before pleading guilty, he might have filed a motion to suppress and argued that the affidavit did not support a finding of probable cause because it failed to tether the suspected criminal activity to his residence. He also argues that having a complete copy of the search warrant affidavit would have permitted him to consider whether to challenge the affidavit's veracity under *Franks v. Delaware*, 438 U.S. 154 (1978).  He adds that because his counsel never demanded a

complete copy of the search warrant affidavit before he pleaded guilty, he lacked the close assistance of competent counsel.  Based on these missed opportunities, he asserts that he would have insisted on going to trial had he known about the complete search warrant affidavit, thus giving him a "fair and just reason" for withdrawing his two guilty pleas under Rule 11.

We begin by noting that a defendant's guilty plea is a "grave and solemn act," *Brady v. United States*, 397 U.S. 742, 748 (1970), and therefore that when a defendant enters a guilty plea pursuant to a plea hearing that complies with Federal Rule of Criminal Procedure 11, he is left with "a very limited basis upon which to have his plea withdrawn," *United States v. Bowman*, 348 F.3d 408, 414 (4th Cir. 2003).  In other words, a properly conducted Rule 11 guilty plea colloquy creates a "strong presumption that the plea is final and binding." *United States v. Lambey*, 974 F.2d 1389, 1394 (4th Cir. 1992) (en banc).  Reflecting this, Rule 11(d)(2)(B) provides specifically that a defendant in Milam's circumstances must show "a fair and just reason for requesting the withdrawal."  And a "fair and just reason" is "one that essentially challenges the fairness of the Rule 11 proceeding." *United States v. Puckett*, 61 F.3d 1092, 1099 (4th Cir. 1995) (cleaned up).

To determine whether a defendant has advanced a fair and just reason to withdraw his guilty plea, we have identified a nonexclusive list of factors to be considered by the district court:

> (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether [the] defendant has had close assistance of competent counsel, (5) whether withdrawal will cause

10

prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources.

*United States v. Moore*, 931 F.2d 245, 248 (4th Cir. 1991).  Milam essentially relies on the first factor, whether his plea was not knowing or not voluntary, and the fourth factor, whether he had the close assistance of competent counsel.  To satisfy the first factor, in particular, Milam would have to offer credible evidence that his plea was not a "voluntary expression of his own choice," or that it was not a "knowing, intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences."  *Brady*, 397 U.S. at 748.  But *Brady* does not mandate clairvoyance; a plea is not rendered unknowing or involuntary because a defendant "did not correctly assess every relevant factor entering into his decision" or "misapprehended the quality of the State's case."  *Id.* at 757.  Moreover, even where a defendant was aware of the direct consequences of his guilty plea, he can still have his plea set aside if he shows that he was improperly "influenced" to plead guilty, *i.e.*, that egregious governmental misconduct was *material* to his decision to plead guilty.  *United States v. Garrett*, 141 F.4th 96, 103 (4th Cir. 2025).

At the outset, we note that Milam's Rule 11 colloquies during both guilty pleas were routine but thorough, and Milam has not challenged them.  He confirmed that he understood the charges against him, that he had discussed them with his attorney, and that he was satisfied with his attorney's performance.  He also confirmed that he understood that he would not necessarily be able to withdraw his plea once it was accepted.  After thorough questioning by the district court in each case, Milam pleaded guilty, and the court accepted his plea as knowing and voluntary.  Milam was thus aware of the consequences

11

of his guilty pleas.  Indeed, he has not alleged otherwise.  Nonetheless, he asserts that the government's failure to produce a complete copy of the warrant and affidavit influenced him to plead guilty and that its error was thus material.

The district court found otherwise, and we agree.

The record shows that the incomplete warrant affidavit that Milam originally received recounted one instance in which the officers had stopped a vehicle leaving Milam's residence with drug paraphernalia inside, as well as large amounts of cash, marijuana, and packaging materials.  The complete warrant affidavit, by contrast, recounted two instances in which officers had stopped vehicles leaving Milam's residence with drugs or drug paraphernalia.  The complete warrant affidavit thus contained *only stronger evidence* of probable cause.  Stated otherwise, the government's deficient disclosure *understated* the evidence of probable cause, thus suggesting that the receipt of the complete warrant affidavit would have made it more likely that Milam would decide to plead guilty.

When weighing materiality, we also cannot overlook the benefits that Milam hoped to and did receive from pleading guilty in each case.  *See Ferrara v. United States*, 456 F.3d 278, 294–97 (1st Cir. 2006).  In the firearms case, the record strongly indicates that Milam possessed an unflinching desire to plead guilty immediately to the § 922(g)(1) count, hoping that the government would not prosecute or investigate him further.  Milam's attorney testified that Milam stated unequivocally that he wanted to plead guilty as quickly as possible to the firearms charge.  She stated that "of all the clients" she had represented over 30 years, Milam was the most "adamant that he wanted to get into court on that first

arraignment day and plead guilty to being a felon in possession of a firearm once he learned that that carried a ten-year possible statutory maximum." She added that she had repeatedly encouraged him to "slow it down," telling him that he "may have defenses" and that because there was a search warrant, he "may have a search warrant issue." But, according to counsel, Milam "consistently and very passionately" expressed that "he was very worried about things surfacing in or around his case that could put him in prison for life" and that "he wanted to go ahead and take responsibility and plead guilty to that gun case in the hopes that the government might not move forward" with the drug case or conduct further investigations. Additionally, Milam received substantial benefits from pleading guilty in the drug case. Milam's counsel testified that she helped Milam negotiate a plea agreement that limited his drug-weight exposure and obviated a § 924(c) count, the latter of which would have entailed a mandatory consecutive sentence.

In short, we conclude that Milam has not shown that the government's scanning error was material to his decision to plead guilty.

And for this same reason, we conclude also that Milam fails to show that he lacked the close assistance of competent counsel. *United States v. Mayberry*, 125 F.4th 132, 141 (4th Cir. 2025) (noting that a defendant seeking to withdraw a guilty plea on the ground that he lacked the close assistance of counsel "must show that his counsel's error made a material difference in his decision to plead guilty"). Milam has, again, provided no reason to think that he would have filed a motion to suppress, as opposed to pleading guilty, when faced with *stronger* evidence of probable cause. Fortifying that conclusion, Milam's attorney, having reviewed both the incomplete copy of the search warrant affidavit and the

13

full copy, testified that her advice to Milam would not have been any different had they received the complete warrant and affidavit. And she further testified that she had informed Milam that they could file a motion to suppress instead of immediately pleading guilty, but that Milam had no interest in this option.

Milam now suggests that he could also have filed a motion under *Franks* to challenge the search warrant as containing false or misleading statements. But that suggestion is most speculative. He points to a description in the affidavit of the items recovered in the search of his vehicle — a description that was included in the incomplete copy of the affidavit he received — to argue that the affidavit was deliberately false. Specifically, he notes that the affidavit stated that officers recovered "[a] black bag with a large amount of cash marijuana and packaging materials." Yet, he does not dispute that the evidence showed that $14,612 in cash, two grams of marijuana, and packaging materials were indeed recovered and that he had advised the officers that the cash and marijuana belonged to him. While the phrase "a large amount" in the description could arguably be read to modify "marijuana" and "packaging materials," it could also be read to modify only the amount of cash, which was indeed a large amount. But in either case, how he would have converted this dispute over ambiguous language into a winnable *Franks* motion is hardly conceivable. Moreover, Milam provided no evidentiary support that he would have been interested in challenging the search warrant affidavit under *Franks*.

14

Based on this record, we agree with the district court that a full disclosure of the search warrant affidavit would not have changed the direction that Milam chose — to plead guilty in both cases.

### III

Milam next contends that the district court erred in entertaining and agreeing with the government's argument that the district court deny him credit for acceptance of responsibility when the government had earlier agreed in the plea agreement to such a reduction and failed to object when the presentence report reflected that agreement. While the government was required to object to the presentence report within 14 days, it did not do so. *See* Fed. R. Crim. P. 32(f)(1). At sentencing, however, Milam likewise did not object to the government's making its argument that he was not entitled to credit for acceptance of responsibility under U.S.S.G. § 3E1.1. Absent a defendant's objection, a district court's "decision to hear the government's objection may be treated as an implicit finding of the existence of good cause" to extend the government's time for objecting. *United States v. Aidoo*, 670 F.3d 600, 612 (4th Cir. 2012). In any event, there was no unfair surprise in this case, as the record reflects that Milam was on notice that the government would likely contest any reduction for acceptance of responsibility. Indeed, the government had, in its plea agreement with Milam, reserved the right to challenge acceptance of responsibility if Milam's conduct prior to sentencing so justified. Moreover, when Milam's counsel proposed his guideline calculation to the district court at sentencing, he indicated that he understood that Milam might not receive credit for acceptance of responsibility.

15

Regardless, the district court had an independent obligation to determine whether Milam was entitled to a reduction for acceptance of responsibility. *See United States v. White*, 875 F.2d 427, 431 (4th Cir. 1989). And it clearly acted with this recognition when it observed during sentencing that there was "no way" that someone who "starts dealing drugs in the jail" while awaiting sentencing should be entitled to acceptance of responsibility under the Guidelines. This conduct after Milam's plea but before his sentencing provided the court good reason to deny him credit for acceptance of responsibility. Indeed, we have specifically concluded that a district court did not commit reversible error in denying a defendant credit for acceptance of responsibility when he, like Milam, continued to distribute drugs after he was indicted and entered a plea agreement. *See United States v. Kidd*, 12 F.3d 30, 34 (4th Cir. 1993). We find likewise here that the district court did not commit reversible error.

IV

Finally, Milam contends that his 300-month sentence was substantively unreasonable. He acknowledges that we may presume that his below-Guidelines sentence is reasonable, that "the nature and circumstances of the offenses of conviction were serious," and that his "criminal history score" is high. But he maintains nonetheless that his 300-month sentence was greater than necessary to achieve the purposes of sentencing, noting that he "has an excellent work history in the commercial fishing industry," that he is "close to his family," and that his early struggles with drug addiction "provide[] some explanation for his repeated problems with the law."

16

A defendant's sentence is substantively unreasonable when "it is longer than necessary to serve the purposes of sentencing." *United States v. Swain*, 49 F.4th 398, 402 (4th Cir. 2022) (quoting *United States v. Fowler*, 948 F.3d 663, 668 (4th Cir. 2020)). Congress has specified that those purposes are "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). Moreover, any sentence must account for "(1) the nature of the offense and the defendant's history and characteristics; (2) the kinds of sentences legally available; (3) the advisory sentencing range provided by the Sentencing Guidelines; (4) any relevant policy statement issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities; and (6) the need for restitution." *United States v. Zuk*, 874 F.3d 398, 409 (4th Cir. 2017) (citing 18 U.S.C. § 3553(a)).

When a defendant challenges his sentence as substantively unreasonable, we "independently examine the totality of the circumstances" to assess whether the district court abused its discretion in determining that its chosen sentence adequately promoted § 3553(a)'s basic aims. *United States v. Fitzpatrick*, 126 F.4th 348, 353 (4th Cir. 2025) (cleaned up). And, of course, we do so against the presumption that a sentence is reasonable if it falls within the advisory Guidelines range. *See United States v. Perry*, 92 F.4th 500, 518 (4th Cir. 2024).

17

In this case, we conclude that Milam's 300-month sentence, which was 60 months below the bottom of the Guidelines range, was not longer than necessary to effectuate the purposes of sentencing. Milam was the leader of the Aryan Kings, a violent White supremacist gang, and in that role, he involved himself in significant drug distribution. He was accountable for at least 3,000 kilograms of converted drug weight according to his plea agreement, and he likely could have been held accountable for a much greater amount were it not for that agreement. The district court was well within its discretion to punish him for the seriousness of these offenses. Moreover, Milam possessed a long criminal history, stretching back to the time he was 17 years old.

As important, Milam's postconviction conduct added a serious aggravating factor. While in prison and awaiting sentencing, Milam did not hesitate to return to his drug-distributing ways. And he also violently assaulted two sheriff's deputies. Finally, he sent a letter to a member of another White supremacist group bragging about his work on behalf of the Aryan Kings and asking if the Aryan Kings could merge with that group. In light of this ongoing criminal activity, the court reasonably concluded that Milam's prior run-ins with law enforcement had failed to promote respect for the law or produce any meaningful deterrent effect. *See United States v. Oliver*, 133 F.4th 329, 341 (4th Cir. 2025).

Although it is true, as Milam contends, that some considerations weighed in favor of leniency, such as his close relationship with his family, the district court acknowledged those factors, noting that its sentence reflected the good as well as the bad. And it was not an abuse of discretion for the court to have concluded that the good supported a sentence

60 months below the bottom of his advisory Guidelines range but that no further reduction was warranted.

*    *    *

Milam made calculated strategic decisions to plead guilty to three different substantial crimes, and the district court found that his decisions were knowing and voluntary in light of all the facts. While awaiting sentencing, however, Milam assaulted two sheriff's deputies and distributed drugs to fellow inmates. Once caught, he pivoted to an after-the-fact effort to withdraw his first two pleas based on an immaterial scanning error during discovery, apparently hoping for a better outcome. On these facts, the district court denied Milam's request to withdraw his guilty pleas, declined to give him credit for acceptance of responsibility, and sentenced him to a term of 300 months' imprisonment — a sentence 60 months below the recommended Guidelines range. We find no reversible error or abuse of discretion and accordingly affirm the judgment of the district court.

AFFIRMED